O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| HUMBERTO SALAS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. L-08-22 |
| | § | |
| UNITED INDEPENDENT SCHOOL | § | |
| DISTRICT, *et al*, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Plaintiff Humberto Salas seeks money damages against United Independent School District ("UISD"), United High School ("UHS") Principal Alberto Aleman, UHS Assistant Principal Jeroladette Centilli, and UHS Police Officer Ricardo Camarillo for events related to Salas's arrest at UHS on December 3, 2007. Among other claims, Salas alleges that UISD, Aleman, and Centilli violated his procedural due process rights when they suspended him and placed him in an alternative education program. Specifically, Aleman and Centilli allegedly failed to conduct a fair and impartial investigatory hearing, and UISD failed to train Aleman and Centilli to do so. Salas alleges the hearing was improper because:

1) Centilli, who conducted the initial hearing, was a witness,

2) Centilli formed an opinion before the hearing, and

1 / 9

3) Centilli should not have relied on an investigation conducted by Camarillo, alleged victim of Salas's assault. Defendants move for summary judgment on these issues. (Docket Nos. 30, 31.)

Background

Elisa Valadez, Salas's mother-in-law and legal guardian at the commencement of this suit, spoke with Centilli after arriving at UHS following the arrest. According to Valadez's affidavit, Centilli told her that Salas had "struck a police officer" and that "the incident was on video." (Docket No. 36, Valadez Aff. ¶ 5-8, 11.) Centilli told her Salas was going to be arrested and charged with striking an officer. Id. Centilli's voluntary statement written the day of the incident also indicates that she witnessed some of Salas's behavior. (Docket No. 30, Centilli Aff., Ex. 1, at 13-16.)

The day after Salas's arrest, on December 4th, Centilli held an informal hearing with Salas, Elisa Valadez, and her husband Martin. (Docket No. 36, Valadez Aff., Ex. A.) Sometime during the conference, Centilli provided Salas and his in-laws with written notice of the decision to place Salas on a three-day suspension and assign him to an alternative education program for forty-five days. Id. In reaching the decision, she relied on various witness statements including statements taken

by Camarillo. (Docket No. 30, Centilli Aff. ¶ 13.) Finally, she "informed them of the due process rights afforded Mr. Salas." Id. at ¶ 16. Defendant Aleman was not involved in the decision to discipline Salas. (Docket No. 30, Aleman Aff. ¶ 7.)

Salas subsequently appealed Centilli's decision. The appeal was heard by Annette Perez, UISD's Director of Student Relations/Discipline Management, on December 7, 2007. (Docket No. 30, Perez Aff. ¶ 5.) Salas's attorney was present at the appeal (Docket No. 36, Valadez Aff. ¶ 10.) Perez attests that she did not base her decision on conversations with any party before the independent hearing and that she had the sole authority to decide the appeal. (Docket No. 30, Perez Aff. ¶¶ 6, 7.) Perez upheld Salas's discipline.

Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A disputed fact is material if its resolution could impact the outcome of the action. Anderson v.

Liberty Lobby Co., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). Doubts and all reasonable inferences must be resolved in favor of the nonmoving party. Fierros v. Tex. Dep't of Health, 274 F.3d 187, 190 (5th Cir. 2001).

Discussion

Salas complains that UISD's decision to suspend him and place him in an alternative education program deprives him of a property interest without affording him due process of law. Students have a property interest in education. Goss v. Lopez, 419 U.S. 565, 574, 95 S. Ct. 729, 736 (1975).[1] However, placement in an alternative education program does not deprive students of their interest. See Navares v. San Marcos Consol. Indep. Sch. Dist., 111 F.3d 25, 26 (5th Cir. 1997). Students in such a program "are not deprived access to public education" but are only "transferred from one school program to another school program with stricter discipline." Id. at 26.

Under Goss, however, a student may not be suspended from public school without the "minimum procedures" required by the due process clause. 419 U.S. at 574, 95 S. Ct. at 736. Students must be given notice, an explanation of the evidence,

---

[1] Texas created a property interest by enacting laws providing a free education to all Texas children. See Tex. Educ. Code Ann. §§ 4.001, 25.001, 25.085 (Vernon 2006 & Supp. 2008).

and an opportunity to present their side of the story. Id. at 581, 95 S. Ct. at 740. As Goss explains:

> There need be no delay between the time 'notice' is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is.

Id. at 582, 95 S. Ct. at 740.

UISD went beyond the minimum requirements of Goss. Centilli met with Salas and his in-laws the day after the incident. Salas was presented with written notice of the offense and the contemplated punishment. While there is no account of the meeting in the record, Salas does not contend that he had no opportunity to respond.

Instead, Salas's primary attack is that he was deprived of a "fair and impartial evidentiary hearing" because Centilli was not impartial. (Docket No. 36, ¶ 2.) The supposed bias arises from Centilli's role as a witness to some of the events, her supposed prejudgment of Salas's guilt before the December 4th hearing, and her reliance on witness statements, some of which were taken by the alleged victim Camarillo.[2] Salas concedes that

---

[2] Centilli attests that she relied on the witness statements in Exhibit 1 of her affidavit to prepare for the informal hearing with Salas and his in-laws. (Docket No. 30, Centilli's Aff., ¶ 13.) Exhibit 1 contains, among other documents, six witness

a level of absolute neutrality is not required, but cites <u>Riggan v. Midland Indep. Sch. Dist.</u>, 86 F. Supp. 2d 647 (W.D. Tex. 2000), arguing that a decision-maker's personal involvement can be so great as to violate due process. (Docket No. 36, ¶ 8.) In his opinion, Judge Royal Furgeson recognized that high-school administrators must sometimes deal with insulting conduct toward themselves and others, but he found the <u>Riggan</u> case "unusual because of the personal nature of [the principal's] involvement in the alleged sexual misconduct." <u>Id.</u> at 657. There, the school principal was under investigation for sexual improprieties because of rumors concerning certain photographs or video tapes. <u>Id.</u> at 650. Plaintiff Riggan, a student, was thought to have information and pictures pertaining to the investigation. <u>Id.</u> When questioned by another administrator, Riggan admitted that he and friends had followed the principal on one occasion and took pictures of his parked vehicle. <u>Id.</u> He denied, however, being the source of the rumors. <u>Id.</u> When the principal heard of Riggan's interview, he summoned Riggan and his father to his office and accused the student of starting the rumors of sexual misconduct. <u>Id.</u> at 651. He suspended

---

statements taken "on voluntary basis before" Camarillo on December 3rd and 4th before the informal hearing. Exhibit 1 also contains witness statements made after the hearing and a police report written on the 5th with Camarillo listed as the investigating officer. Centilli presumably could not have relied on statements made after the December 4th meeting.

Riggan for three days. Id. At a appeal hearing, the principal continued to pursue punishment of Riggan. Id. at 652. On these facts, Judge Furgeson concluded that the conduct being punished was "of such an obviously personal nature that any reasonable administrator would have deferred to another uninvolved individual to ...mete out any discipline". Id at 657. The Salas incident in the instant case involved nowhere near any such personal involvement by any administrator.

In Goss, the Supreme Court also recognized that at times the disciplinarian may "witness the conduct forming the basis for the charge." 419 U.S. at 584, 95 S. Ct. at 741. Similarly, in Brewer v. Austin Ind. Sch. Dist., the Fifth Circuit recognized that a school administrator involved in the initiation and investigation of charges is not thereby disqualified from conducting a hearing on the charges. 779 F.2d 260, 264 (5th Cir. 1985). In that case, an assistant principal witnessed a student with drug paraphernalia. Id. at 261. He then investigated the student, served as the initial decision-maker recommending suspension, and ultimately served on the appellate panel affirming the discipline. Id. However, Brewer also noted that the facts of a particular case may demonstrate a level of such personal involvement as to create a bias that prevents a student from receiving an impartial hearing, but no such bias was found. Id. at 263.

The instant case is much more similar to Brewer, rather than Riggan. Nothing in the record indicates that Centilli or Camarillo had any preexisting bias towards Salas prior to the events in question. Neither person was the direct object of any alleged misconduct by Salas. Instead, this case involved a brawl in the halls of a public school, a not unusual event. Centilli saw some of the events, and both sides have acknowledged the existence of a video tape showing at least some of the fight. Statements taken by Camarillo appear to be in individual handwriting by people who claim to have witnessed the fight. Under the circumstances, the fact that Centilli had some personal knowledge of Salas's conduct did not disqualify her from making an initial disciplinary decision.

Moreover, the decision by Centilli was separately reviewed. Unlike Riggan, there is no indication that Centilli or Camarillo made a special effort to influence the appeal. Annette Perez attests that she did not base her decision on conversations with any of the parties prior to the appeal. (Docket No. 30, Perez Aff. ¶ 7.) Salas does not allege any impartiality or bias on the part of Perez. Thus, any potential defects in the initial punishment could be, and were, cured by the appeal heard by Perez. See Sullivan v. Houston Indep. Sch. Dist., 475 F.2d 1071, 1077 (5th Cir. 1973) (holding that subsequent hearing cured defect when personally-offended decision-maker admitted

that the purpose of the initial hearing was not to hear student's explanation but instead to hear student apologize). Consequently, Salas's due process rights were not violated.

<u>Conclusion</u>

For the reasons outlined above, UISD's and Aleman and Centilli's motions for summary judgment (Docket Nos. 30, 31) are **GRANTED** as to Salas's procedural due process arguments. Plaintiff's remaining claims are a § 1983 excessive use of force claim and a state-law assault claim against the remaining Defendant Ricardo Camarillo. Those parties are **DIRECTED** to confer forthwith and submit a <u>joint</u> final pretrial order no later than May 11, 2009, or advise the Court why they cannot do so.

DONE at Laredo, TX, this 17th day of April, 2009.

_____
George P. Kazen
United States District Judge